IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DARTANION JOVON CHANDLER                                    PLAINTIFF

VERSUS                                        CIVIL ACTION NO. 1:24-cv-00318-RPM

MATT HALEY, et al.                                          DEFENDANTS

## ORDER GRANTING MOTION [28] FOR SUMMARY JUDGMENT
## DUE TO PLAINTIFF'S FAILURE TO EXHAUST ADMINSITRATIVE REMEDIES

On October 16, 2024, *pro se* Plaintiff Dartanion Jovon Chandler filed this lawsuit under

42 U.S.C. § 1983. When he filed his Complaint, Plaintiff was a pretrial detainee being housed at

the Harrison County Adult Detention Center ("HCADC") in Gulfport, Mississippi, [1] at 2-3, but

he is now housed in the custody of the Mississippi Department of Corrections at the South

Mississippi Correctional Institution in Leakesville, Mississippi, [13-1] at 1. Plaintiff names Matt

Haley, Warden Unknown Hubbard, and Sgt. Unknown Pavolini as Defendants. [1] at 1; [25] at 1.

Plaintiff is proceeding *in forma pauperis* [7], and his allegations were clarified at an Omnibus

Hearing on August 18, 2025.[1]

On September 12, 2025, Defendants filed a Motion [28] for Summary Judgment Due to

Plaintiff's Failure to Exhaust Administrative Remedies. Plaintiff did not respond, despite having

the chance to do so. (Text-Only Order, Aug. 18, 2025). For the following reasons, the Motion [28]

for Summary Judgment Due to Plaintiff's Failure to Exhaust Administrative Remedies will be

granted. Plaintiff's claims against all Defendants will be dismissed with prejudice, and this case

will be closed.

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a more definite statement), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff claims that Haley and Hubbard are "in charge" at HCADC, and Pavolini is a member of the Emergency Response Team. [1] at 4. In June 2024, Plaintiff "was housed in the Mental Health section" at HCADC, when Pavolini and another officer "search[ed] the cell of a red on red inmate name[d] Dixon." *Id*. During their search, Pavolini found "a styrofoam tray filled with urine [and] feces," and he "place[d] the tray directly in front of [Plaintiff's] door." *Id*. Allegedly, Pavolini left "the biohazardous waste in front of [Plaintiff's] door . . . for three or four days," *id*., during which time Plaintiff was not permitted to leave his cell to take a shower, [27] at 11.

Plaintiff claims that having "to breathe in biohazardous fumes . . . caused [him] mental, emotional and physical distress." [13] at 1. He asserts that "everything in [his cell] was soaked with the stench of the poisonous fumes and [his] respiratory system was agitated, which caused [his] Sarcoidosis to flare up." *Id*. Specifically, Plaintiff claims that he "lost [his] voice" and his "face broke out." [27] at 17. After four days, Plaintiff testified that a trustee "removed the tray," and Plaintiff was given "a new cell," "a new jumper suit[,] and new clothes." *Id*. at 15-16. Plaintiff seeks $20,000,000.00 in damages. [1] at 4.

### B. Defendants' Summary Judgment Evidence

Among other things, Defendants submitted a copy of HCADC's Inmate Grievance Program as evidence in support of their Motion [28] for Summary Judgment Due to Plaintiff's Failure to Exhaust Administrative Remedies. [28-5] at 2. It provides that "HCADC has a formal three (3) step grievance policy for use by all inmates." *Id*. It requires inmates "to use this program

before they proceed with filing a lawsuit." *Id*. The contours of the program are outlined like this:

> All grievances must be filed on the correct standard grievance form provided. If an inmate is not satisfied with the Level I response, he/she may proceed to Level II (Deputy Warden). If not satisfied with a Level II response, he/she may proceed to Level III (Warden). Level III is the final step in the process[.]

*Id*. The Inmate Grievance Program requires inmates to "make their request to the Grievance Officer in writing within a 30-day period after an incident has occurred[.]" *Id*.

Plaintiff testified at the Omnibus Hearing that he is "familiar with the grievance process" at HCADC. [27] at 24. Plaintiff understood "that [he had] to file a grievance, and then there's a two- and three-step process to that grievance process." *Id*. Accordingly, Plaintiff filed a Level I grievance about the events described in his Complaint. *Id.* at 24-25. On October 5, 2024, Plaintiff submitted a "Grievance Form" listing the date of incident as "[o]n or around the end of June '24." [28-2] at 80. He recounted thus:

> On the fifth day of breathing in biohazardous fumes from the marinated urine and feces, I am finally granted some relief from the traumatizing, [torturous] event, by Lieutenant Kenneth Cunningham, who allowed me to take a shower, and change out of my jumpsuit!

*Id*. (emphasis omitted). In response, Plaintiff was advised: "This is not a grievance. Time has expired. Correspondence that is threatening and/or abusive will not be address[ed]." *Id.* Plaintiff "never completed the second and third steps of the grievance process before [he] filed [his] lawsuit." [27] at 26.

Michelle Russell, the Grievance Officer at HCADC, testified by affidavit that she is "responsible for the Inmate Relief Request/Inmate Grievance Forms." [28-3] at 1. In that capacity, she "search[ed] . . . grievances filed by inmate Dartanion Javon Chandler, Sr. related to the allegations that his rights were violated while [he was] housed at the Harrison County Adult

Detention Center." *Id*. at 2. She found that Plaintiff "only submitted a Level I Grievance Form." *Id*. She "found no record of any Level II or III grievances submitted by Dartanion Javon Chandler relating to the allegations that his rights were violated while housed at the Harrison County Adult Detention Center [due] to his claim of exposure to toxic substances." *Id*.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id*. at 397-98 (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle*

*House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with significant probative evidence." *Id*. (quotation omitted).

### III. DISCUSSION

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Fifth Circuit takes "a strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (quotation omitted). "Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020). "The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act," or PLRA. *Id.*

A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

"The exhaustion requirement hinges on the availability of administrative remedies." *Pettis v. Hall*, No. 1:19-cv-00127-RPM, 2021 WL 785096, at *1 (S.D Miss. Mar. 1, 2021) (quotation and brackets omitted). "An inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (quotation and brackets omitted). "Exceptions to the exhaustion requirement only apply in extraordinary circumstances, and the prisoner bears the burden of demonstrating the . . . unavailability of administrative review." *Badger v. Fisher*, No. 5:16-cv-00107-MTP, 2017 WL 5906045, at *2 (S.D. Miss. Nov. 30, 2017) (quotation omitted).

The evidence before the Court demonstrates that Plaintiff failed to exhaust available administrative remedies before filing this lawsuit for at least three reasons. First, Plaintiff did not timely file his Level I grievance about the allegations raised in his Complaint. The incident about which he complains occurred toward the end of June 2024. [1] at 4; *see also* [28-2] at 80. HCADC's Inmate Grievance Program requires that a grievance must be filed "in writing within a 30-day period after an incident has occurred," [28-5] at 2, giving Plaintiff until the end of July 2024 to initiate the grievance process. Yet Plaintiff's Level I grievance was not filed until October 5, 2024, [28-2] at 80—at least two months too late. Because Plaintiff missed the 30-day deadline, timely and proper "exhaustion has become impossible." *Carson v. Cnty. of Warren, MS*, No. 3:21-cv-00593-KHJ-MTP, 2024 WL 4205591, at *2 (S.D. Miss. Sept. 16, 2024) (dismissing claims with prejudice where "the deadlines . . . to file administrative grievances ha[d] long since passed").

Second, and most important, Plaintiff admits that he never filed a Level II or Level III grievance, despite understanding that he was required to exhaust the three-step process before filing this lawsuit. [27] at 24-26. Thus, Plaintiff's claims are unexhausted by his own admission, which is supported by the uncontested summary-judgment evidence. *See Shorter v. Pace*, No. 3:21-cv-00672-TSL-RPM, 2023 WL 2002089, at *3 (S.D. Miss. Jan. 18, 2023), *report and recommendation adopted by*, 2023 WL 1997795, at *1 (S.D. Miss. Feb. 14, 2023).

In other words, Defendants have carried their initial summary-judgment burden of proving their entitlement to judgment as a matter of law based on Plaintiff's failure to exhaust administrative remedies. *See Lane v. Doe*, 399 F. App'x 964, 965 (5th Cir. 2010) (affirming summary judgment based on failure to exhaust administrative remedies where the movant's evidence "establish[ed] beyond peradventure all of the essential elements of the defense of

exhaustion to warrant summary judgment in his favor" (quotation omitted)). Since Plaintiff filed no summary-judgment response, he has adduced no documentary evidence to show that he in fact exhausted his administrative remedies about these claims before filing this lawsuit. Plaintiff has not carried his burden as non-movant of "go[ing] beyond the pleadings and designat[ing] specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Finally, Plaintiff is no longer housed at HCADC, [13-1] at 1, so he could not possibly exhaust its administrative-grievance procedure now. "Where an inmate can no longer exhaust administrative remedies because he has been transferred, . . . and [he] had ample opportunity to exhaust prior to being transferred, but failed to do so, dismissal with prejudice is proper." *Hernandez v. Doe 1-7*, 416 F. Supp. 3d 163, 166 (E.D.N.Y. 2018); *see also Burns v. Moore*, No. 99Civ.0966-LMM-THK, 2002 WL 91607, at *7 (S.D.N.Y. Jan. 24, 2002).

Plaintiff failed to exhaust his administrative remedies with respect to the claims now before the Court. As the Court has no discretion to excuse that failure, which cannot now be cured, Plaintiff's claims against all Defendants should be dismissed with prejudice. *See Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007) ("[F]ailure to exhaust administrative remedies usually results in a dismissal without prejudice . . . [but] when exhaustion is no longer possible, dismissal may be with prejudice."). In view of this procedural defect, and because the dismissal is with prejudice, the Court will not address the merits of Plaintiff's claims. *See Dillon*, 596 F.3d at 273 ("When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed to the merits."); *Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. Nov. 6, 2000)

8

(declining to reach the merits of unexhausted claims).

## IV. CONCLUSION

The Court has considered and liberally construed all pleadings, testimony, and arguments. Any not specifically mentioned would not have changed the outcome.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [28] for Summary Judgment Due to Plaintiff's Failure to Exhaust Administrative Remedies filed by Defendants Matt Haley, Warden Unknown Hubbard, and Sgt. Unknown Pavolini is **GRANTED**. Plaintiff Dartanion Jovon Chandler's claims against all Defendants are **DISMISSED WITH PREJUDICE** for his failure to exhaust administrative remedies.

A separate final judgment will be entered under Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED,** this 22nd day of June, 2026.

/s/ *Robert P. Myers, Jr.*

ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE